IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESTATE OF JUSTIN PAUL SMITH, ET AL.** *Plaintiffs*, <br><br> v. <br><br> **CITY OF PHILADELPHIA, ET AL.** *Defendants*. | **CIVIL ACTION** <br><br> **NO. 21-4395** |

MEMORANDUM ON SUMMARY JUDGMENT

**Baylson, J.**                                                                                                **January 16, 2025**

In this action pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendant Officer Curt McKee ("McKee") violated decedent Justin Paul Smith's ("Smith") Fourth and Fourteenth Amendment rights. Before the Court is a Motion for Summary Judgment. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

I.     **FACTUAL ALLEGATIONS**

McKee was employed by the Philadelphia Police Department and City of Philadelphia. Statement of Undisputed Material Facts, ECF 47-2 ("SUMF") ¶ 2; Response to Statement of Undisputed Material Facts, ECF 51 ("RSUMF") ¶ 2(a). McKee graduated from the Philadelphia Police Academy in 2003. SUMF ¶ 36 (citing Ex. A,[1] McKee Dep. at 9:16–10:2, ECF 47-5); RSUMF ¶ 36(a)).

On December 5, 2018, at 8:47 am, Smith was on the 3500 block of Belgrade Street in Philadelphia. SUMF ¶ 3; RSUMF ¶ 3(a). McKee responded to a radio call for a fight on that block. SUMF ¶¶ 4, 5; RSUMF ¶¶ 4(a), 5(a). A civilian said to McKee, "Yo, cop, look at him. He

---

[1] Unless noted, the Exhibits referred to accompany Defendants' Motion, ECF 47.

1

is going in the house!" and pointed to 3586 Belgrade Street. SUMF ¶ 6, RSUMF ¶ 6(a). Smith forcibly[2] entered 3568 Belgrade Street. SUMF ¶; Ex. A, McKee Dep. 12:9–10, 13:12, ECF 47-5.

McKee asked the resident of 3568 Belgrade Street, "does he live here?" SUMF ¶ 8 (citing Ex. B, Body Worn Camera ("BWC") at 13:46:59, ECF 47-6); RSUMF ¶ 8(a). The resident yelled "get him out of here," SUMF ¶ 9; Ex. B, BWC at 13:46:53–54, ECF 47-6, and held the door for McKee to enter her home, which he did. SUMF ¶¶ 9, 10 (citing Ex. B, BWC at 13:47:03, ECF 47-6); RSUMF ¶¶ 9(a), 10(a). The resident yelled "get out of my house" at Smith. SUMF ¶ 10; Ex. B, BWC at 13:47:04, ECF 47-6. McKee asked the resident, "who is this guy?" SUMF ¶ 11; RSUMF ¶ 11(a). The resident responded, "I don't know who this guy is." SUMF ¶ 11; Ex. B, BWC at 13:47:05–06, ECF 47-6. The resident instructed Smith to leave. SUMF ¶ 11; Ex. B, BWC at 13:47:08–09, ECF 47-6; RSUMF ¶ 11(a).

Smith was in the kitchen, leaning against the sink.[3] SUMF ¶ 15. McKee said, "come here," and gestured for the resident to get behind him. SUMF ¶ 12 (citing Ex. B, BWC at 13:47:14, ECF 47-6); RSUMF ¶ 12(a). Smith said, "call the cops." SUMF ¶ 13 (citing Ex. B, BWC at 13:47:09–14, ECF 47-6 & Ex. A, McKee Dep. at 14:1–2, ECF 47-5); Ex. B, BWC at 13:47:11–16, ECF 47-6. McKee said, "I am a cop" and moved the resident away from Smith. SUMF ¶ 14; RSUMF ¶ 14(a). McKee pointed his taser at Smith. SUMF ¶ 16 (citing Ex. B, BWC, at 13:47:14,

---

[2] Defendants assert that Smith pushed past a woman in the doorway of 3568 Belgrade Street and entered the home. SUMF ¶ 7 (citing Ex. A, McKee Dep. at 13:10–21, ECF 47-5). Plaintiffs argue "[i]t is not clear from the video that [Smith] pushed past a woman in the doorway . . . ." RSUMF ¶ 7(a). However, McKee testified that he saw a man "attempt[ing] and [] proceeding to force his way inside" of the door by "forcibly push[ing] his way in," and Plaintiffs do not cite to anything in the record to support their dispute. Ex. A, McKee Dep. 12:9–10, 13:12, ECF 47-5.

[3] Defendants allege that Smith had knives in plain view next to him and had his hand behind his back. SUMF ¶ 15. Plaintiffs dispute the presence of the knives and that Smith had his arm behind his back. RSUMF ¶ 15(a) (citing Ex. B, BWC at 13:47:04–13:47:39, ECF 47-6).

2

ECF 47-6 & Ex. A, McKee Dep. at 14:21–15:6, ECF 47-5); RSUMF ¶ 16(a).  McKee said, "Let me see your hands" at least nine times.  SUMF ¶ 17 (citing Ex. B, BWC, at 13:47:15–38, ECF 47-6); RSUMF ¶ 17(a).  Smith moved towards McKee without showing his hands and said, "Get the fuck out of here."[4]  SUMF ¶¶ 18, 19 (citing Ex. B, BWC, at 13:47:15–38, ECF 47-6); Ex. B, BWC, at 13:47:30–32, ECF 47-6.

McKee attempted to deploy his taser, but it did not deploy.[5]  SUMF ¶ 20 (citing Ex. B, BWC, at 13:47:37, ECF 47-6 & Ex. A, McKee Dep. at 15:5–6, ECF 47-5).  Smith moved towards McKee.[6]  SUMF ¶ 23 (citing Ex. B, BWC, at 13:47:38, ECF 47-6).  McKee stepped backwards, dropped the taser and discharged one round from his firearm, striking Smith, who fell, SUMF ¶ 26 (citing Ex. B, BWC, at 13:47:40–41, ECF 47-6 & Ex. A, McKee Dep. at 17:21–18:5, 22:8–13, ECF 47-5); RSUMF ¶ 26(a); Ex. B, BWC, at 13:47:37–39, ECF 47-6.  McKee radioed "shots fired, police discharge, give me an assist."  SUMF ¶ 27 (citing Ex. B, BWC at 13:47:46, ECF 47-

---

[4] Plaintiffs deny that Smith did not comply with McKee's order to show his hands because "it is not clear from the video . . . ."  RSUMF ¶ 18(a).  However, the video shows that Smith's hands remained behind his back after McKee's commands.  Ex. B, BWC, at 13:47:30–32.  Further, McKee testified as his deposition that Smith did not show his hands, even after McKee's commands.  Ex. A, McKee Dep. at 15:1–5, ECF 47-5.  Plaintiffs do not cite to anything to support a dispute that Smith did not show his hands beyond generalizations about the video.  Ex. A, McKee Dep. At 12:9–10, 13:12, ECF 47-5.  But the video show Smith's hands behind his back after McKee's commands.  Ex. B, BWC, at 13:47:30–32.  Plaintiffs do not cite to anything in the record to dispute this beyond a generalized assertion about the video, which is inaccurate.  The Court accepts this fact as undisputed.

[5] Plaintiffs argue that "it is unclear from the video . . . when Officer McKee pulled the trigger of the taser and when it failed to deploy."  RSUMF ¶ 20(a) (citing Ex. B, BWC, at 13:47:04–39, ECF 47-6) (emphasis added).  But the taser's failure is undisputed.  Id.

[6] Defendants assert that Smith grabbed a knife from the knife block in the kitchen, SUMF ¶ 24 (citing Ex. B, BWC, at 13:47:38, ECF 47-6), and displayed it in his hand while moving quickly toward McKee, SUMF ¶ 25(a) (citing Ex. B, BWC, at 13:47:40, ECF 47-6).  Plaintiffs dispute that Smith had a knife.  RSUMF ¶ 24(a) (citing Plfs. Ex. D, DNA Report, ECF 49-6 & Ex. B, BWC, 13:47:04–39, ECF 47-6).

6); RSUMF ¶ 27(a). McKee asked the resident if she saw Smith grab a knife, and she confirmed that she did. SUMF ¶ 31 (citing Ex. B, BWC, at 13:49:12, ECF 47-6).

The Police Department and District Attorney's Office investigated the incident. Both concluded that the shooting was justified because McKee was at risk of serious bodily injury or death. SUMF ¶¶ 34, 35 (citing Ex. D, Letter from District Attorney, ECF 47-8 & Ex. A, McKee Dep. at 39:6–8, ECF 47-5); RSUMF ¶¶ 34(b), 35(b). McKee was trained by the Philadelphia Police Department. SUMF ¶ 37 (citing Ex. A, McKee Dep. at 10:7–22, ECF 47-5); RSUMF ¶ 37(a) (citing Ex. A, McKee Dep., at 10:7–22, ECF 47-5).[7]

On September 8, 2021, Plaintiffs commenced this suit in the Court of Common Pleas of Philadelphia County. Compl., ECF 1-1. Defendants removed the case to federal court. ECF 1. The parties completed discovery. On November 26, 2024, Defendants filed this Motion. ECF 47.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

---

[7] Defendants assert that McKee receives yearly training on the use of force and updates on the use of tasers, and attends yearly firearm training. SUMF ¶¶ 37, 38, 39. Plaintiffs dispute that McKee receives updated yearly trainings on use of force because he testified only "that he is required to undergo refresher classes," but did not specify the frequency. Id. Plaintiffs dispute that McKee receives yearly trainings on the use of tasers because testified only "that he practices with the taser at the range when he has to requalify with his gun once a year" and did not specify that he receives yearly updates." RSUMF ¶ 38(a) (citing Ex. A, McKee Dep., at 10:11–22, ECF 47-5). Plaintiffs dispute that McKee receives yearly firearm trainings because he testified only "that he practices with the taser at the range when he has to requalify with his gun once a year," and did not specify that he receives yearly trainings. RSUMF ¶ 39(a) (citing Ex. A, McKee Dep., at 10:3–22, ECF 47-5).

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

Where "the victim of deadly force is unable to testify," a court "should be cautious . . . to 'ensure that the officer[s are] not taking advantage of the fact that the witness most likely to contradict [their] story—the person shot dead—is unable to testify.'" Abraham v. Raso, 183 F.3d 279, 294 (3d Cir. 1999) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)). Thus, a court "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officers acted unreasonably.'" Abraham, 183 F.3d at 294 (quoting Scott, 39 F.3d at 915)).

### III. DISCUSSION

As a preliminary matter, there are no genuine material facts in dispute that preclude an award of summary judgment.[8] Although Plaintiffs dispute that Smith had a knife, RSUMF ¶ 24(a) (citing Plfs. Ex. D, DNA Report, ECF 49-6 & Ex. B, BWC, 13:47:04–39, ECF 47-6), and argue that a jury could find that McKee's force was not reasonable, Plfs. Opp. at 7–9, ECF 49, Plaintiffs do not dispute that McKee first attempted to deploy his taser and said "Let me see your hands" to Smith at least nine times before he pulled the trigger on the taser. RSUMF ¶ 17(a). While Plaintiffs argue that "it is not clear from the video whether or not [Smith] complied with any orders by [] McKee, as [] McKee's hands repeatedly block the body camera worn," this is simply a generalization. Id. ¶ 18(a). There are various points in the footage during which Smith can be seen with his hands behind his back, failing to comply with McKee's orders. E.g., Ex. B, BWC, 13:47:30–32, ECF 47-6.[9]

#### A. Plaintiffs Failed To Adduce Evidence That McKee's Actions Were Objectively Unreasonable And Constituted A Constitutional Violation

##### i. Plaintiffs Fail To Establish A Fourth Amendment Violation

Deadly force is a seizure under the Fourth Amendment and must meet the standard of objective reasonableness. Tennessee v. Garner, 471 U.S. 1, 7 (1985). This Court evaluates

---

[8] On December 17, 2024, Plaintiffs untimely filed a brief opposing Defendants' Motion for Summary Judgment, including a response to Defendants' Statement of Undisputed Material Facts ("SUMF"). ECF 49. Plaintiffs' response to the SUMF was insufficient per this Court's rules. That same day, this Court ordered Plaintiffs to re-file a response to the SUMF in accordance with the requirements of this Court. ECF 50. On December 23, 2024, Plaintiffs filed an amended response to the SUMF. ECF 51. While sufficient, the Court notes that many of Plaintiffs' responses deny the Defendants' statement and fail to cite to parts of the record which provide evidence to support their dispute beyond asserting generally that the video was "not clear." Moreover, Plaintiffs' responses include numerous conclusions of law, including assertions about whether McKee's use of force was reasonable. E.g., RSUMF ¶ 22(a).

[9] Further, though this Court need not reach the issue of qualified immunity, the Court notes that McKee would likely be entitled to qualified immunity.

6

whether McKee's use of deadly force was reasonable based on the facts and circumstances. See Terry v. Ohio, 392 U.S. 1, 22–27 (1968); Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

Plaintiffs assert that McKee's use of deadly force was unreasonable, claiming it is disputed that Smith had a knife and that McKee failed to retreat, wait for backup, or use other non-lethal force after his taser failed. Plfs. Opp. at 7, ECF 49. Applying the relevant factors[10] and viewing the facts in the light most favorable to Plaintiffs, no genuine factual dispute exists as to the reasonableness of McKee's actions. The undisputed record shows that Smith repeatedly refused to show his hands despite McKee's multiple commands. Ex. B, BWC, 13:47:04–39, ECF 47-6. McKee first attempted to use a taser, which malfunctioned, and then Smith advanced towards McKee with his hand behind his back. McKee reasonably interpreted Smith's actions as posing an imminent threat. See Santini, 795 F.3d at 417. McKee acted reasonably in light of the possibility that Smith may have been armed, violent, or dangerous since he would not show his hands. Saintil v. Borough of Carteret, 2024 WL 3565308, at *8 (3d Cir. July 29, 2024) (non-precedential) (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007)); Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 698 (E.D. Pa. 2011) (Surrick, J).

---

[10] The following factors guide this Court's analysis: "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, . . . (3) whether the suspect attempts to resist arrest or flee [. . . ,]" Saintil v. Borough of Carteret, 2024 WL 3565308, at *8 (3d Cir. July 29, 2024) (non-precedential) (quoting Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015)), (4) the possibility that the person is violent or dangerous, (5) the duration, (6) whether an arrest was being effecting, (7) the possibility that person is armed, and (8) the number of persons involved, id. (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007)).

Smith's refusal to comply with McKee's commands and his movement towards McKee provided probable cause to believe that Smith posed a significant threat of death or serious physical injury, regardless of whether Smith was armed with a knife. Garner, 471 U.S. at 3; see Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011) (finding justified use deadly force where suspect refused commands and made sudden, threatening movements). Because "the evidence would not support a reasonable jury finding that [McKee]'s actions were objectively unreasonable," this Court grants summary judgment. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).

### ii. Plaintiffs Fail to Establish A Fourteenth Amendment Violation

Similarly, Defendants are entitled to summary judgment on Plaintiffs' Fourteenth Amendment claims for due process violations (Count III) and false imprisonment (Count V).

Liability under the state-created danger doctrine arises where a state actor creates or enhances a danger that deprives an individual of due process. See Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996). Here, the undisputed record fails to show that McKee did so. Plaintiffs failed to adduce evidence that McKee "acted with a degree of culpability that shocks the conscience" or that he "used his [] authority" to create or increase danger. L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 242 (3d Cir. 2016) (citing Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

A false imprisonment claim cannot succeed where the attempted arrest had probable cause. Baker v. McCollan, 443 U.S. 137, 142 (1979). As analyzed above, the undisputed record demonstrates that McKee had probable cause and thus the false imprisonment claim fails. Id.

### B. Defendants Are Entitled to Summary Judgment on Monell Claims

Counts II and IV, asserting municipal liability, require a constitutional violation. The undisputed record fails to establish one. Plaintiffs have not shown that a municipal policy/custom or deliberate or conscious decision by the City injured Smith. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Est. of Roman v. City of Newark, 914 F.3d 789, 7989 (3d Cir. 2019)).

8

### C. Defendants Are Entitled to Summary Judgment on Assault & Battery Claim

Count VI alleges assault and battery, but is barred by Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§ 8541 et seq, which grants municipal employees acting within the scope of their employment immunity from liability for injuries caused by their actions, Johnson v. City of Phila., 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015) (Yohn, J.), aff'd, 837 F.3d 343 (3d Cir. 2016) (quoting 42 Pa. Cons. Stat. Ann. § 8541). As established, the undisputed facts show McKee's use of force was reasonable under the circumstances. Plaintiffs fail to demonstrate a genuine issue of material fact regarding whether McKee engaged in 'willful misconduct,' which is required to overcome immunity under the Act. Because McKee is immune from Plaintiffs' assault and battery claims, Defendants are entitled to summary judgment on Count VI.

### D. Defendants Are Entitled to Summary Judgment on Wrongful Death Act and Survival Act Claim

Count VII asserts claims under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann. § 8301, and Survival Act, 42 Pa. Cons. Stat. Ann. § 8302. However, these "actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death.'" Johnson, 105 F. Supp. 3d at 483 (quoting Sullivan, 765 F. Supp. 2d at 707), aff'd, 837 F.3d 343 (3d Cir. 2016). Just just as Plaintiffs' Monell claims cannot survive without an underlying violation of constitutional rights, Count VII must fail without evidence of a viable claim on one or more of the underlying causes of action.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate **ORDER** follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 21\21-4395 Estate of John Paul Smith et al v. City of Phila et al\21-4395 Memorandum re Motion for Summary Judgment.docx